Present — VAN BRUNT, P. J., DANIELS and BARTLETT, JJ.

Order modified as directed in opinion, and affirmed as modified, without costs.

THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENTS, *v.* THE TWENTY-THIRD STREET RAILROAD COMPANY, APPELLANT.

*Horse railroads in New York city — liability of, to pay to the city a percentage of their earnings — grant of a franchise to individuals who subsequently assign the property and rights acquired thereunder to a corporation — right of the legislature to impose obligations in respect to such property and rights upon such corporation.*

In this action, brought to require the defendant to account for one per cent of the gross earnings received by it in the operation of its cars over the Bleecker street and Fulton Ferry Railroad, of which the defendant is a lessee, it appeared that, by chapter 514 of the Laws of 1860, the right to construct and operate the railroad in question was given to twelve persons therein named, and their assigns, upon paying to the city of New York the same license fee, annually, for each car run thereon, as was paid by other railroads in that city. The rights and franchises so conferred were subsequently assigned to the Bleecker Street and Fulton Ferry Railway Company, which latter company, by chapter 199 of the Laws of 1873, was allowed to extend its route through specified streets in the

city of New York, and required to pay to the city a license fee of fifty dollars for each car used by the company on said extensions. By chapter 647 of the same year the payment of one per cent of the gross receipts of the company was substituted for the license fee of fifty dollars a car.

The defendant in this action is the lessee of the Bleecker Street and Fulton Ferry Railroad Company, and contends that the amendment contained in chapter 647 of the Laws of 1873, imposing the payment of a percentage of gross receipts, was applicable only to the Bleecker Street and Fulton Ferry Railroad Company, and does not purport to, nor does it, in fact, bind the defendant, the lessee of that company.

*Held*, that it was not necessary to refer, in the act requiring the payment of such percentage, to the lessee of the railroad therein mentioned, in order to bind such lessee, and that the defendant was bound to observe the provisions of said act.

It was further claimed by the defendant that it was not liable to pay such percentage, as it nowhere in the lease assumed any obligation to pay the same.

*Held*, that the defendant, being a creature of the legislature, organized for public purposes, it required no further agreement on its part than the agreement which is necessarily implied by law, that in operating a public franchise for private gain it would conform to the existing laws relating thereto.

It was further claimed, as the grant to the twelve associates, under the act of 1860, was not to a corporation but to individuals, that there was no power reserved to the legislature to alter, amend or repeal said act.

*Held*, that, independant of the fact that the act of 1873 authorized an extension of the route of the Bleecker Street and Fulton Ferry Railroad Company, that such company did not owe its franchise in any respect to the assignment made by the twelve associates above mentioned; that the percentage was not assessed upon the railroad and other visible property assigned by the twelve associates to that railroad, but the legislature, having permitted the railroad to be created for a particular purpose, had a right by subsequent legislation to impose such obligations and conditions upon it as it saw fit.

APPEAL from an interlocutory judgment, entered at the New York Circuit, requiring the defendant to account to the plaintiff for ·one per cent of the gross earnings received by the former in the operation of its cars over the Bleecker Street and Fulton Ferry Railroad, in the city of New York, of which the defendant is a lessee.

Chapter 514 of the Laws of 1860 granted the right to construct and operate the road in question to twelve men therein named, and their assigns, upon paying to the city of New York the same license fee annually for each car run thereon as was paid by other railroads in that city. The Bleecker Street and Fulton Ferry Railroad Company was organized as a corporation on the 12th day of December, 1864, under the general railroad act. On the last named day the

twelve persons mentioned in the act of 1860 assigned their rights and franchises under that act to the Bleecker Street and Fulton Ferry Railroad Company. Chapter 199 of the Laws of 1873 allowed that corporation to extend its route through specified streets and required it to pay to the city a license fee of fifty dollars for each and every car used by the company on said extensions, with the privilege of leasing all or any portion of the road, or to consolidate with any other roads. Chapter 647 of the Laws of 1873, passed about a month subsequently to the last named act, substituted for the license fee of fifty dollars a car the payment of one per cent of the gross receipts of the company, to begin October 1, 1875, unless the extension authorized was sooner completed. The Bleecker Street and Fulton Ferry Railroad Company was, under chapter 389 of the Laws of 1875, leased to the defendant by a lease bearing date the 10th day of January, 1876

*Morgan J. O'Brien* and *Thomas Allison*, for the respondent.

*Leslie W. Russell*, for the appellant.

Macomber, J. :

This action is brought to compel the defendant to account for the receipts by it accruing from the operation of the Bleecker Street and Fulton Ferry Railroad route. It is not brought to recover any license fees for cars run by the defendant over the original Bleecker street route described in the act of 1860.

It stands conceded, because so alleged in the complaint, and not denied by the answer, that on the 29th day of September, 1876, the defendant, by virtue of a written agreement, entered upon and took full, sole and exclusive possession of the demised premises described in the complaint, and has ever since retained the same, and has solely and exclusively exercised and enjoyed the franchises, privileges, licenses and immunities of these and other demised premises conferred upon the said Bleecker Street and Fulton Ferry Railroad Company by the laws mentioned in the foregoing preliminary statement, and has solely and exclusively received, to its own use, all the receipts arising from the exercise and enjoyment of said privileges and franchise for operating the horse railroad through such streets.

The position of the learned counsel for the defendant is upon this argument, that, whatever the status of the Bleecker Street and Fulton Ferry Railway Company may be, no obligation is imposed upon this defendant to pay the percentages; and, secondly, that no such obligation was lawfully imposed upon the Bleecker Street and Fulton Ferry Railway Company. It is contended that the amendment mentioned above, as contained in chapter 647 of the Laws of 1873, imposing the payment of percentages of gross receipts is personal to Bleecker Street and Fulton Ferry Railway, and does not purport to bind the lessee of that company. That act declares that in lieu of the payment to the city of New York of the license fee of fifty dollars for each and every car used by the company, there shall be paid by it, annually, on the first day of October, one per cent of the gross receipts of that company. It is manifest that the sole object of the several acts was primarily to clothe the Bleecker Street and Fulton Ferry Company with this valuable franchise; and, secondly, to compel the company to pay into the treasury of the city of New York a proper compensation therefor. As the act did not, in terms, contemplate the operation of the horse cars in those streets by any other company than this one, so there was no requirement resting upon the legislature to be more specific, and to declare in words that such payments should be made by any person or corporation to whom the Bleecker Street and Fulton Ferry Company might lease its railway. This was a sufficient and effective mode of enacting that such percentage of the gross receipts arising from the operation of the railway should be turned into the city treasury. It was not necessary to be more perspicuous in the use of language.

It appears that the rent to be paid by the defendant for the use of this railway for its ninety-nine years lease goes not into the treasury of the Bleecker Street and Fulton Ferry Company, but is paid directly to the stockholders of that company. So that, if the obligation to pay a percentage is personal to that company, and does not follow the company or person who operates the road and has the benefit of the franchise, then a most clever device has been hit upon for depriving the city of New York of the compensation which the legislature said it should receive in part payment of the valuable franchise so granted.

It is further contended that the defendant nowhere in the lease assumes any obligation to pay the percentage. The answer to that is, briefly, that being a creature of the legislature, organized for public purposes, it required no further promise on its part than the agreement which is necessarily implied by law, namely, that in so operating a public franchise for private gain the party shall conform to all existing laws.

It is further urged that the Bleecker Street Company was not liable to pay the percentages provided for by chapter 647 of the Laws of 1873. The argument is that the grant to Stephen R. Roe and his eleven associates, under the act of 1860, was not to a corporation but to individuals, and hence there is not reserved to the legislature any power to alter, amend or repeal the same. This may be conceded. But Stephen R. Roe and his associates did not bestow upon the Bleecker Street and Fulton Ferry Railroad Company the right to operate any other part of the route than that portion which is specified in chapter 514 of the Laws of 1860. It is true, as is found by the learned trial judge, that the route of that railroad to construct, maintain and operate which said company was formed as set forth in its articles of association, is the same as that over which Stephen R. Roe and other persons named in said act were authorized and empowered to operate. But by chapter 199 of the Laws of 1873, that company was authorized and empowered to extend its railway and to use the former road, in connection with the roads of other railroad companies in said city, upon such terms as might be agreed upon between the companies.

Moreover, as it seems to us, it is an erroneous proposition that the Bleecker Street and Fulton Ferry Company owes its franchise in any respect to the assignment made to it by Stephen R. Roe and others. The thing which is thus assessed a percentage for the benefit of the city of New York is not the railroad and other visible property assigned by Stephen R. Roe and his copartners to the Bleecker Street and Fulton Ferry Railroad Company, nor is it that property in combination with the privilege of operating horse cars on that route. The legislature by the general act of 1850 permitted the corporation to be created for a particular purpose, and, by subsequent legislation placed it under certain obligations and conditions to pay a small part of its gains to the plaintiff. It said to the

corporation by its public acts, in substance, you may exist and operate horse cars on the route secured to Roe and others by obtaining their consent, on condition that you turn into the treasury of the city one per cent of your gross earnings. It is no answer to this proposition to say that the individuals who formerly operated the road could not thus be made to pay any sum otherwise than had been agreed to in the original charter to them. Had Stephen R. Roe and his associates been able to and had they in fact created that corporation, and had so clothed it by deed with all the property and privileges conferred upon them by the act of 1860, there would be some reason for the attitude taken by counsel for the defendant. But that company is not indebted to those persons for its existence and its high privilege of conducting a lucrative business as a common carrier, with all those advantages and immunities to its shareholders which incorporated capital tends to produce. It is indebted solely to the people of the State, acting through their legislature, for such privileges, and it is bound by the reasonable condition that a portion of its emoluments should be turned into the public treasury.

It follows that the judgment appealed from should be affirmed.

BARTLETT, J., concurred ; VAN BRUNT, P. J., not sitting.

Judgment affirmed.